## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-00108** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **LAWRENCE BURGESS, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Brandon Timmons ("Timmons") alleges that Defendant Burgess ("Burgess") violated his civil rights when he assaulted him and that Defendants Prince and Lux violated his civil rights by failing to provide him medical care following the assault. Presently before the Court is a motion to dismiss Timmons's complaint filed by Defendants Burgess and Lux and Timmons's motion to convert the motion to a motion for summary judgment. (Doc. Nos. 20, 27.) For the following reasons, the motion to dismiss will be granted in part and denied in part and the motion to convert will be denied as moot.

### I.    BACKGROUND

On November 3, 2020, Timmons filed a civil rights case against various individuals employed by the Pennsylvania Department of Corrections ("DOC"). See Timmons v. Isaac, No. 1:20-cv-02035 (M.D. Pa. Nov. 3, 2020), ECF No. 1. Following several rounds of amendment, the case proceeded on Timmons's fourth amended complaint. Id., ECF No. 122. Upon consideration of Defendants' motions to dismiss the fourth amended complaint, the Court concluded that the complaint contained misjoined claims in violation of Federal Rule of Civil Procedure 20. Id., ECF Nos. 159–60. To remedy the misjoinder, several claims were dismissed without further leave to amend, several claims were dismissed without prejudice, and several

claims were severed into new lawsuits for which Timmons was required to either pay separate filing fees or move for leave to proceed in forma pauperis.  Id.  Timmons was also required to file amended complaints with respect to each of the severed cases.  Id.  The instant case—which pertains to Timmons's claims against Defendants Burgess, Lux, and Prince arising from Burgess allegedly assaulting Timmons and Lux and Prince subsequently failing to provide him medical care—is the only one of the five severed cases in which Timmons complied with those orders.[1] Timmons paid the requisite filing fee on February 24, 2023, and moved for leave to amend his complaint on February 23, 2023.  (Doc. No. 10.)  The Court granted in part and denied in part the motion for leave to amend on May 22, 2023, dismissing Timmons's proposed claims against Superintendent Brittain ("Brittain") and his proposed denial of medical care claim against Defendant Burgess, but otherwise allowing Timmons's amended complaint to be docketed. (Doc. Nos. 17–18.)

According to the allegations in the amended complaint, Timmons was an inmate in SCI-Frackville on September 20, 2020, when he was transported to an outside medical center for treatment of a medical condition that was unrelated to this case.  (Doc. No. 19 at 2.)  Defendant Burgess and another officer, who were transporting Timmons to the outside medical facility, purportedly verbally harassed and threatened him while they were in transit.  (Id.)

Upon arriving at the medical facility, Timmons refused to have his blood drawn.  (Id.) Defendant Burgess allegedly responded by repeatedly punching Timmons in the face and forcing him to have his blood drawn.  (Id.)  Timmons allegedly suffered a broken nose, a concussion, multiple "knots and hickies," and "massive swelling."  (Id.)

---

[1] The other four severed cases were dismissed without prejudice for Timmons's failure to pay the filing fee or move for leave to proceed in forma pauperis.

Timmons was temporarily transferred to Dallas State Correctional Institution ("SCI-Dallas"), where he was seen by Defendant Lux, a nurse in the prison. (Id.) Timmons told her that he needed treatment, but Lux allegedly refused to provide him any treatment or medication. (Id.) Lux also allegedly falsified documents to cover up her refusal to provide treatment and to conceal the true extent of Timmons's injuries. (Id.) Timmons was seen by Defendant Prince, a doctor in the prison, later that day. (Id.) Timmons told him about his injuries, but Prince allegedly refused to treat him. (Id.) Upon his transfer back to SCI-Frackville, Timmons continued to seek medical care for his injuries but was denied such care. (Id.) The complaint asserts claims for medical malpractice and denial of medical care against Lux and Prince and claims for excessive force, assault, and battery against Burgess. (Id. at 3.)[2] Timmons seeks compensatory and punitive damages. (Id.)

Defendants Burgess and Lux ("Moving Defendants") moved to dismiss the amended complaint on May 23, 2023. (Doc. No. 20.) They advance three arguments for dismissal: (1) that all official capacity claims must be dismissed because Defendants are entitled to sovereign immunity under the Eleventh Amendment; (2) that Timmons failed to exhaust administrative remedies with respect to his medical care claim against Lux; and (3) that Timmons's medical malpractice claim against Lux must be dismissed because Timmons failed to file a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3. (Doc. No. 21 at 8–14.) Briefing on the motion is complete and the motion is ripe for judicial review. (Doc. Nos. 21, 30, 31.) Timmons has additionally moved to convert the motion into a motion for summary judgment

---

[2] As noted above, the Court previously dismissed Timmons's proposed denial of medical care claim against Burgess and proposed claims against Superintendent Brittain. (Doc. Nos. 17–18.)

pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 27.) Defendant Prince answered the
amended complaint on June 5, 2023. (Doc. No. 23.)

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of
the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d
224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a
plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure
8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled
to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure
12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P.
12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all
factual allegations in the complaint and all reasonable inferences that can be drawn from them,
viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent
dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims
are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,
210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the
defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has
not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R.
Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

**B.    Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

5

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.      Official Capacity Claims

At the outset, the Court agrees with Moving Defendants that they are entitled to sovereign immunity from Timmons's official capacity claims. DOC employees sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment from claims for damages brought pursuant to Section 1983. See Downey v. Pa. Dep't of Corrs., 968 F.3d 299, 310–11 (3d Cir. 2020). The Court will accordingly dismiss all official capacity claims from the amended complaint.

### B.      Exhaustion

The Court will next consider Moving Defendants' argument that Timmons failed to exhaust administrative remedies with respect to his medical care claims against Defendant Lux. Under the PLRA, prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court. See 42 U.S.C. § 1997e(a); Downey, 968 F.3d at 304. The statute requires "proper exhaustion," meaning the

6

prisoner must complete the administrative review process in accordance with the procedural rules set by the prison.  See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  The failure to exhaust available administrative remedies is an affirmative defense.  See Jones v. Bock, 549 U.S. 199, 216 (2007).  Accordingly, "[T]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).

A prisoner is only required to exhaust administrative remedies that are "available."  See id. at 266 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  See id. at 266–67 (quoting Ross v. Blake, 578 U.S. 632, 643–44 (2016)).

Under the Pennsylvania Department of Corrections' grievance policy, DC-ADM 804, a prisoner must first submit a written grievance within fifteen (15) days from the date of the incident.  See DC-ADM 804 § 1(A)(8), available at https://www.cor.pa.gov/About%20Us/ Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited Nov. 20, 2023). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  See id. § 1(A)(11).  Next, the prisoner must submit a written appeal to an

intermediate review level within fifteen (15) working days.  See id. § 2(A)(1)(a).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen (15) working days.  See id. § 2(B)(1)(b).

When a defendant asserts a failure to exhaust administrative remedies argument based on indisputably authentic documents related to the plaintiff's administrative exhaustion attempt, the argument may be considered in the context of a motion to dismiss.  See Rinaldi, 904 F.3d at 262 n.1.  The standard of review is the same as that for other motions to dismiss filed pursuant to Rule 12(b)(6), meaning that all factual allegations in the plaintiff's complaint are accepted as true for the purpose of resolving the motion and that the Court may not resolve disputed issues of fact.  See id.

Moving Defendants argue that Timmons failed to exhaust administrative remedies with respect to his claims against Lux because he failed to include those claims in any grievance filed in accordance with DC-ADM 804.  (Doc. No. 21 at 8–12.)  Timmons responds that he exhausted administrative remedies by filing a complaint of abuse pursuant to DC-ADM 001 that was subsequently investigated by DOC staff.  (Doc. No. 30 at 2.)  Timmons additionally asserts that he attempted to mail two grievances about Lux's actions to SCI-Dallas but that the grievances were never processed, rendering the administrative remedy process unavailable.  (Id. at 3.)  Moving Defendants argue in their reply brief that Timmons misconstrues DC-ADM 001 because DC-ADM 001 specifically excludes medical care claims from the definition of abuse claims covered by the policy.  (Doc. No. 31 at 3.)  Moving Defendants acknowledge that prison officials conducted an investigation regarding "the September 21, 2020 hospital events" pursuant to Timmons's allegation of abuse under DC-ADM 001, but note that they did not mention DC-ADM 001 in their supporting brief because Timmons's claims against Lux could not be asserted

pursuant to DC-ADM 001 and had to be raised through a grievance under DC-ADM 804.  (Id. at 3–4.)  Finally, Moving Defendants argue that Timmons's "self-serving" and unsupported statements that he mailed grievances to SCI-Dallas about Defendant Lux's actions are not sufficient to establish that he exhausted administrative remedies.  (Id. at 4.)

The Court will deny the motion to dismiss to the extent that it seeks dismissal on the basis of failure to exhaust administrative remedies.  Although Moving Defendants are correct that "claims of inadequate medical [care] or intentionally denied medical care" are specifically excluded from the class of abuse claims that may be grieved pursuant to DC-ADM 001, see DC-ADM 001, available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/001%20Inmate%20Abuse.pdf (last visited Nov. 20, 2023), this does not conclusively establish that Timmons failed to exhaust administrative remedies when he asserted claims against Lux pursuant to DC-ADM 001.  The Third Circuit has held that "where a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is 'properly exhausted' under the PLRA."  See Rinaldi, 904 F.3d at 271.  Thus, a claim that is not properly asserted under DC-ADM 001 may nevertheless be deemed exhausted if prison officials consider and reject the claim on its merits rather than dismissing it on procedural grounds.

In this case, Moving Defendants acknowledge that an investigation was conducted into "the September 21, 2020 hospital events" based on Timmons's allegation of abuse under DC-ADM 001, but they fail to state whether Timmons's claims against Lux were considered on their merits as part of the investigation and fail to provide any documentary evidence as to what occurred during the investigation.  Given this lack of support for Moving Defendants' argument, the Court cannot conclude that Timmons failed to exhaust administrative remedies because there

appears to be a possibility that the claims were denied on their merits—and thus exhausted—under Rinaldi.  See 904 F.3d at 271.  Therefore, the Court finds that Moving Defendants have failed to meet their burden to establish the affirmative defense of failure to exhaust administrative remedies at this stage of litigation, and the Court will deny this portion of the motion to dismiss.  Having reached this conclusion, the Court will deny Plaintiff's motion to convert the motion to dismiss into a motion for summary judgment because the motion to convert pertains solely to Moving Defendants' administrative exhaustion argument.

### C.      Certificate of Merit

Finally, the Court will dismiss Timmons's medical malpractice against Defendant Lux because Timmons has failed to file a certificate of merit in support of the claim.  Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a certificate of merit in any case in which the plaintiff alleges that "a licensed professional deviated from an acceptable professional standard" within sixty days after filing the complaint.  See Pa. R. Civ. P. 1042.3. Rule 1042.3 is substantive state law that must be applied by federal courts.  See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264–65 (3d Cir. 2011).

In this case, Timmons filed the complaint that initiated the original case on November 3, 2020, so he was required to file a certificate of merit no later than January 2, 2021.  Timmons did not file a certificate of merit until June 11, 2023, over two and a half years after the deadline. (Doc. No. 26.)  Although the Court subsequently granted Timmons an extension of time to file the certificate, this action was improper under Rule 1042.3, which provides that the Court may only extend the deadline for the filing of a certificate of merit "for a period not to exceed sixty days."  See Pa. R. Civ. P. 1042.3(d).  Additionally, Rule 1042.3 states that a motion to extend the deadline for a certificate of merit must be filed "by the thirtieth day after the filing of a notice of

intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a)." See id. Timmons's motion for extension of time was filed on June 11, 2023, nearly one year after the Moving Defendants provided notice of their intent to move to dismiss this case for failure to file a certificate of merit. See (Doc. No. 29); Timmons, No. 1:20-cv-02035, ECF No. 144. Thus, because both Timmons's motion for extension of time and the Court's Order granting the motion were procedurally improper under Rule 1042.3, the Court will vacate the Order granting the extension. Having done so, the Court finds that Timmons's malpractice claim against Lux is subject to dismissal because Timmons did not file a certificate of merit in support of the claim by the January 2, 2021 deadline and did not timely move to extend the deadline.[3]

**D.     Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. Based on the foregoing, the Court will deny leave to amend as futile with respect to the dismissed official capacity claims and malpractice claim because the claims are barred as a matter of law.

---

[3] Timmons's deliberate indifference claim against Lux will not be dismissed for failure to file a certificate of merit. Certificates of merit are not required for deliberate indifference claims. See, e.g., Crawford v. McMillan, 660 F. App'x 113, 116 (3d Cir. 2016) (unpublished).

**IV.      CONCLUSION**

For the foregoing reasons, Moving Defendants' motion to dismiss will be granted in part and denied in part and Timmons's motion to convert the motion to a motion for summary judgment will be denied as moot.  The Court will additionally impose case management deadlines for this case.  An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
