IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
|     Plaintiff | : | |
| | : | No. 1:23-cv-00108 |
| v. | : | |
| | : | (Judge Kane) |
| **LAWRENCE BURGESS, et al.,** | : | |
|     Defendants | : | |

**MEMORANDUM**

This is a prisoner civil rights case in which pro se Plaintiff Brandon Timmons ("Timmons") alleges that Defendants violated his civil rights during an alleged assault and the resulting medical care. Presently before the Court are Defendants' motions for summary judgment and several procedural motions filed by Timmons. (Doc. No. 38.) For the following reasons, the Court will grant Defendant Prince's motion for summary judgment, grant in part and deny in part the motion for summary judgment filed by Defendants Burgess and Lux, deny Timmons's procedural motions, and allow this case to proceed as to Timmons's claims against Defendant Burgess only.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On November 3, 2020, Timmons filed a civil rights case against various individuals employed by the Pennsylvania Department of Corrections ("DOC"). See Timmons v. Isaac, No. 1:20-cv-02035 (M.D. Pa. filed Nov. 3, 2020). Following several rounds of amendment, the case proceeded on Timmons's fourth amended complaint. See id., ECF No. 122. Upon consideration of Defendants' motions to dismiss the fourth amended complaint, the Court concluded that the complaint contained misjoined claims in violation of Federal Rule of Civil Procedure 20. See id., ECF Nos. 159–60. To remedy the misjoinder, the Court dismissed several claims without further leave to amend and several claims without prejudice, and severed several claims into new

lawsuits for which Timmons was required to either pay separate filing fees or move for leave to proceed in forma pauperis. See id. The Court also required Timmons to file amended complaints with respect to each of the severed cases. See id. The instant case—which pertains to Timmons's claims against Defendants Burgess, Lux, and Prince arising from Burgess allegedly assaulting Timmons and Lux and Prince subsequently failing to provide him medical care—is the only one of the five severed cases in which Timmons complied with those orders.[1]

On February 23, 2023, Timmons filed a motion for leave to amend, seeking to add a claim for deliberate indifference to a serious medical need against Defendant Burgess and claims against Kathy Brittain, the superintendent of SCI-Frackville during the relevant period. (Doc. No. 10.) The Court granted the motion for leave to amend in part and denied it in part, denying the motion to the extent that it sought to add the new claims, but otherwise accepting Timmons's proposed amended complaint as the operative complaint in the case. (Doc. Nos. 17–18.) Timmons's amended complaint was docketed that day. (Doc. No. 19.)

Defendants Burgess and Lux moved to dismiss the amended complaint on May 23, 2023, and Prince answered the amended complaint on June 5, 2023. (Doc. Nos. 20, 23.) The Court granted the motion to dismiss in part and denied it in part on November 20, 2023, dismissing Timmons's official capacity claims with prejudice, but denying the motion in all other respects. (Doc. Nos. 35–36.) Defendants Burgess and Lux then answered the amended complaint November 21, 2023. (Doc. No. 37.)

On May 2, 2024, Timmons filed a motion to appoint an expert medical witness to assist him with the case and a motion to compel the Defendants to allow him to review transcripts of

---

[1] The other four severed cases were dismissed without prejudice for Timmons's failure to pay the filing fee or move for leave to proceed in forma pauperis.

2

his deposition.  (Doc. Nos. 45, 47.)  Timmons filed another motion seeking to review the deposition transcript on May 7, 2024.  (Doc. No. 50.)  On June 3, 2024, Timmons filed a motion to compel discovery.  (Doc. No. 53.)  The Defendants filed their motions for summary judgment on September 3, 2024.  (Doc. Nos. 60–61.)  The Defendants filed statements of material facts and supporting briefs on September 6, 2024.  (Doc. Nos. 64–65, 67, 69.)  Timmons responded to the motions and statements of material facts in October 2024.  (Doc. Nos. 72, 74, 76–77.)  Defendants subsequently filed reply briefs, making the motions ripe.  (Doc. Nos. 80, 85.)

On November 26, 2024, Timmons filed a motion to stay and a motion for sanctions.  (Doc. Nos. 88–89.)  On November 27, 2024, Defendant Prince filed a suggestion of bankruptcy and motion to stay, in which he noted that the company that employed him during the relevant period, Wellpath Holdings, Inc. ("Wellpath"), had moved for voluntary bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court") and that the case was therefore subject to an automatic stay under 11 U.S.C. § 362.  (Doc. No. 91.)  The Court granted the motion to stay and stayed and administratively closed the case on January 24, 2025.  (Doc. No. 95.)  On July 9, 2025, the Court took judicial notice that the Bankruptcy Court had accepted Wellpath's plan of reorganization and that the case was accordingly no longer subject to an automatic stay.  (Doc. No. 96.)  The Court lifted the stay, reopened the case, and stated that it would address all pending motions in the case in due course.

## II.     PROCEDURAL MOTIONS

At the outset, the Court will address Timmons's pending procedural motions.  Timmons first seeks appointment of an expert medical witness.  (Doc. No. 45.)  The Court will deny this motion.  The Court does not have the authority to appoint an expert witness to assist a civil

3

plaintiff at the government's expense. See Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987).

Timmons next seeks an order compelling the Defendants to provide him with a copy of his deposition transcript so that he can review it for errors in accordance with Federal Rule of Civil Procedure 30(e). (Doc. Nos. 47, 50.) The Court will deny these motions. Although Rule 30(e) states that if a deponent who has filed an appropriate request must be provided a copy of his deposition transcript to review for possible errors, the copy must be requested from the stenographer who recorded the deposition; it is not the Defendants' burden to produce the copy. See Fed. R. Civ. P. 30(e); EBC, Inc. v. Clark Bldg., Sys., Inc., 618 F.3d 253, 265–66 (3d Cir. 2010). There is no indication in Timmons's motions that he has requested a transcript from the stenographer who recorded his deposition or that the stenographer failed to provide the copy.

Timmons next seeks to compel discovery. (Doc. No. 53.) Timmons states that he sent a discovery request to Defendants Burgess and Lux on April 25, 2024, but that Defendants failed to respond. (Doc. No. 54.) Defendants assert that they did, in fact, respond to the request. (Doc. No. 55.) Timmons has not refuted this assertion through a reply brief or any other document. Accordingly, because it appears from the record before the Court that Defendants have fulfilled their obligations with respect to the relevant discovery request, the Court will deny the motion to compel discovery.

Finally, Timmons seeks to stay the case and sanction Defendants because he interprets Defendants' summary judgment arguments that Timmons has not produced sufficient evidence to support his claims as misrepresentations that Timmons did not produce any exhibits or file a statement of material facts. (Doc. Nos. 88–89.) The Court does not construe Defendants' summary judgment documents as asserting that Timmons failed to produce evidence or a

4

statement of facts, but rather that the exhibits and statement are insufficient to defeat their motion for summary judgment. This is a proper summary judgment argument that will be considered as necessary to resolve the Defendants' summary judgment motions and does not provide any basis to stay the case or sanction Defendants. Accordingly, the Court will deny the motion to stay and motion for sanctions. Having resolved Timmons's procedural motions, the Court turns its attention to Defendants' summary judgment motions.

### III. MATERIAL FACTS[2]

Timmons was incarcerated at SCI-Frackville on September 20, 2020. (Doc. No. 64 ¶ 1; Doc. No. 76 ¶ 1.) Timmons reported to prison staff that he could not move his left leg. (Doc. No. 64 ¶ 2; Doc. No. 76 ¶ 2.) He was transferred to the emergency room at Lehigh Valley Medical Center East. (Doc. No. 64 ¶ 3; Doc. No. 76 ¶ 3.) The parties dispute what happened at the hospital. According to Defendants Burgess and Lux, Timmons became very agitated, physically resisted when a nurse attempted to draw blood, started "swinging at officers" and attempted to take a gun from one of the correctional officers who accompanied him to the hospital. (Doc. No. 64 ¶¶ 6–9.) Timmons asserts to the contrary that he was not aggressive or agitated, that he did not move while the nurse attempted to take his blood, did not swing at officers, and did not try to take one of the officer's guns. (Doc. No. 76 ¶¶ 6–9.)

The parties also dispute what actions the officers took in the hospital. Defendants vaguely state that the officers "attempted to regain positive, physical control over Timmons" and then applied additional restraints after Timmons assaulted officer Ruddy. (Doc. No. 64 ¶¶ 10–

---

[2] Unless otherwise noted, the background herein is derived from the parties' Rule 56.1 statement of facts. (Doc. Nos. 64, 69, 72, 76.)

12.) Timmons assert to the contrary that the officers physically forced him to give blood, that he was fully restrained, and that he did not assault the officers. (Doc. No. 76 ¶¶ 10–12.)

Timmons was discharged from the hospital at approximately 1:59 a.m. on September 21, 2020, and transported to SCI-Dallas. (Doc. No. 64 ¶¶ 13–14; Doc. No. 76 ¶¶ 13–14.) Defendant Lux, a nurse at SCI-Dallas, examined Timmons upon his arrival at the prison. (Doc. No. 64 ¶ 15; Doc. No. 64-2 at 18–19; Doc. No. 76 ¶ 15.)[3] Lux reported that Timmons had an abrasion above his right eyebrow, dried blood in his nose and mouth, and no sign of edema. (Doc. No. 64 ¶¶ 16–17; Doc. No. 64-2 at 21; Doc. No. 76 ¶¶ 16–17.) Lux noted that Timmons complained of pain and weakness in his left wrist and his lower extremities and an inability to stand. (Doc. No. 64-2 at 20.) Defendant Prince, a doctor in the prison, placed Timmons on 23-hour medical observation. (Doc. No. 69 ¶ 10; Doc. No. 72 ¶ 10.)

Timmons was seen by Sandra Miklaszewicz, a nurse in the prison, on September 21, 2020. (Doc. No. 69 ¶ 11; Doc. No. 72 ¶ 11.) Timmons stated, "I'm okay," and Miklaszewicz reported that he was alert and oriented, did not have chest pain or shortness of breath, had a steady gait, and had a small abrasion above his right eye. (Doc. No. 69 ¶ 11; Doc. No. 69-1 at 502; Doc. No. 72 ¶ 11.) Miklaszewicz noted that the plan was to continue Timmons on 23-hour medical observation. (Doc. No. 69 ¶ 11; Doc. No. 69-1 at 502; Doc. No. 72 ¶ 11.)

---

[3] Defendants have produced medical records to support their factual assertions regarding the care Timmons received, and Timmons has offered nothing more than conclusory, unsupported assertions that these records were falsified to refute these assertions. These conclusory unsupported assertions are not sufficient to create a genuine dispute of material fact. Accordingly, where Timmons has responded to factual assertions supported by medical records with nothing more than conclusory statements of falsification, the Court will treat the Defendants' assertions as undisputed. To the extent, however, that Defendants attempt to use the medical records to establish the facts of what occurred during the relevant assault in the hospital rather than the medical care Timmons received, the facts are not undisputed because the finder of fact could reasonably believe Timmons's testimony regarding the events in the hospital over that of other witnesses.

Later on September 21, 2020, Timmons was seen by Defendant Prince. (Doc. No. 69 ¶ 12; Doc. No. 69-1 at 500; Doc. No. 72 ¶ 12.) Timmons complained of nose pain. (Doc. No. 69 ¶ 12; Doc. No. 69-1 at 500; Doc. No. 72 ¶ 12.) Prince noted that Timmons's nose was "midline with no edema" and that he had no difficulty breathing through it. (Doc. No. 69 ¶ 12; Doc. No. 69-1 at 500; Doc. No. 72 ¶ 12.) Prince found that Timmons's chest pain and weakness was resolved and cleared him to return to SCI-Frackville. (Doc. No. 69 ¶ 12; Doc. No. 69-1 at 500; Doc. No. 72 ¶ 12.) Timmons was transferred back to SCI-Frackville on September 25, 2020. (Doc. No. 69 ¶ 15; Doc. No. 72 ¶ 15.) During his subsequent medical treatment in SCI-Frackville, Timmons complained that his nose was broken, but assessments by several professionals at the prison and an x-ray showed no signs that it was broken. See (Doc. No. 69 ¶¶ 24–30; Doc. No. 72 ¶¶ 24–30).[4]

## IV.   LEGAL STANDARD

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence would affect the outcome of the case under

---

[4] Because the Court concludes below that summary judgment in favor of Defendant Lux is warranted on the merits of Timmons's claims, the Court does not include facts in this section related to her argument that Timmons failed to exhaust administrative remedies on the claims against her.

applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In

doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

**B.      Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## V.   DISCUSSION

Defendants Burgess and Lux advance five arguments in supporting their motion for summary judgment: (1) Burgess is entitled to judgment on the merits of Timmons's excessive force claim and/or qualified immunity because the record shows that his actions were reasonable; (2) Burgess is entitled to sovereign immunity on Timmons's state tort claims; (3) Timmons failed to exhaust administrative remedies with respect to his claims against Lux; (4) Timmons's deliberate indifference claim against Lux fails on its merits; (5) Timmons cannot recover compensatory damages because the record does not show that he suffered more than a de minimis physical injury.  (Doc. No. 65.)  Defendant Prince argues that he is entitled to summary judgment because: (1) the record shows that he was not deliberately indifferent to a serious medical need or negligent; and (2) Timmons's certificate of merit with respect to his state law tort claims against Prince is legally defective.  (Doc. No. 67.)  The Court will first consider Timmons's claims against Burgess before addressing the claims against Defendants Lux and Prince because the claims against those Defendants are based on the medical care Timmons received after his purported physical injuries.

    A.    **Claims Against Burgess**

        1.    **Excessive Force**

To succeed on his excessive force claim, Timmons must prove that force was applied "maliciously and sadistically for the very purpose of causing harm." See Jacobs v. Cumberland Cnty., 8 F.4th 187, 193 (3d Cir. 2021) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). This requires consideration of whether the force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson v. McMillian, 503 U.S. 1, 7 (1992). Several factors inform this analysis, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)).

Defendant Burgess is the only Defendant against whom Timmons asserts an excessive force claim. Burgess argues that he is entitled to summary judgment on the claim because the record establishes that the force he used was reasonable. (Doc. No. 65 at 11–18.)

The Court finds that Burgess is not entitled to summary judgment because he has not met his burden to show the absence of a genuine issue of material fact. Burgess asserts in his brief that "Timmons was unintentionally struck twice in the face during an unplanned use of force" and that this "minimal force was necessary and reasonable to regain positive physical control over Timmons only after Timmons attempted to resist and attack hospital and corrections' staff." (Doc. No. 65 at 12.) Burgess, however, cites no evidence for the proposition that the strikes were "unintentional" or that Timmons was struck only twice. Burgess states in a footnote that

11

"following Timmons' deposition, he has clarified his claim that he was only and allegedly punched twice in the face and not repeatedly," but again cites no evidence for this assertion.

Burgess's statement of material facts is similarly unhelpful. The statement asserts that Timmons became aggressive and agitated, swung at officers and tried to take one of their guns, but it does not provide any facts as to the amount of force Burgess used in response to these actions other than conclusory assertions that he and the other officers "attempted to regain positive, physical control over Timmons" and "applied" additional restraints to him. (Doc. No. 64 ¶¶ 10, 12.)

Absent any facts in the summary judgment record as to the amount of force Burgess used, this Court cannot grant summary judgment in his favor. His argument is essentially that Timmons's actions caused the use of some force to be necessary and that the Court should therefore deem the use of force reasonable. But he is missing the essential step of showing the amount of force that was used. The Court cannot conclude that there is an absence of any genuine issues of material fact when there is nothing in the record to establish the amount of force Burgess used. The Court will accordingly deny summary judgment on Timmons's excessive force claim.[5]

### 2. Qualified Immunity

Burgess additionally argues that he is entitled to qualified immunity on Timmons's excessive force claim. "The doctrine of qualified immunity protects government officials from

---

[5] To the extent Burgess bases his argument on a purported lack of evidence to support Timmons's claims in accordance with Celotex, 477 U.S. at 323, and its progeny, this argument plainly fails. Timmons has offered his own account of what happened at the hospital, and the only contrary evidence Burgess has offered is differing accounts from other witnesses. The question of which testimony should be believed is a credibility determination that may not be made at this stage of litigation.

12

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  See Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated, and (2) whether that right was "clearly established."  See Pearson, 556 U.S. at 232.  These prongs may be considered in either order. See id. at 236.  A right is clearly established for purposes of the qualified immunity analysis if established Supreme Court or Third Circuit precedent "would have put government officials on fair notice that their conduct violated the plaintiff's rights" at the time of the alleged violation. See Montemuro v, Jim Thorpe Area Sch. Dist., 99 F.4th 639, 645 (3d Cir. 2024).  Qualified immunity is an affirmative defense that must be pleaded and proven by the defendant asserting it. See Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014).

Burgess's qualified immunity argument fails for essentially the same reason his merits argument fails.  He argues that the record establishes that the force he used was reasonable, but he has simply failed to provide any evidence to establish the amount of force he used.  This Court cannot conclude that Burgess acted reasonably if it does not know what he did.  And the

Court cannot simply assume facts that have not been placed before it in the summary judgment record. It is Burgess's burden to show the absence of a genuine issue of material fact, and he has plainly failed to satisfy that standard.

### 3. Sovereign Immunity

Burgess's final argument is that he is entitled to sovereign immunity on Timmons's state law tort claims. Pennsylvania law provides that Commonwealth employees acting within the scope of their employment are entitled to sovereign immunity from most state law claims. See 1 Pa.C.S. § 2310. With ten limited exceptions, see 42 Pa.C.S. § 8522, Commonwealth employees retain their sovereign immunity with respect to both intentional tort and negligence claims. See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing Holt v. Nw. Pa. Training P'Ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997)).

A defendant's action is within the scope of his employment if (1) it is the kind of action that the employee is employed to perform; (2) it occurs substantially within the job's authorized time and space limits; and (3) it is motivated at least in part by a desire to serve the employer. See Farmer v. Decker, 353 F. Supp. 3d 342, 350 (M.D. Pa. 2018). "Under Pennsylvania law, employees' actions are not within the scope of their employment if they are 'different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Williamson v. Bolton, No. 24-2246, 2025 WL 1232624, at *3 (3d Cir. Apr. 29, 2025) (unpublished) (quoting Justice v. Lombardo, 208 A.3d 1057, 1067 (Pa. 2019)).

Burgess again fails to meet his burden to show that he is entitled to state sovereign immunity. The Court cannot determine whether Burgess's actions were "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose

14

to serve the master," Williamson, 2025 WL 1232624, at *3, because Burgess has not provided any facts as to what actions he took. The Court cannot assume facts that are not in evidence and cannot simply assume that the force Burgess used was within the scope of his employment when he has not developed any factual record on this issue. Accordingly, his motion for summary judgment will be denied on the issue of sovereign immunity.

> **B.      Claims Against Lux and Prince**

Having concluded that Burgess is not entitled to summary judgment in any respect, the Court turns its attention to the claims against Defendants Lux and Prince, both of whom are being sued based on their allegedly deficient medical care for Timmons. The sole surviving claim against Lux is deliberate indifference to a serious medical need in violation of the Eighth Amendment, while Prince is being sued for deliberate indifference and malpractice.

To succeed on a deliberate indifference claim, a plaintiff must establish "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "A plaintiff's mere disagreement as to the proper medical treatment" is not sufficient to support a deliberate indifference claim. See Lanzaro, 834 F.2d at 346. Courts

15

will not "second-guess the propriety or adequacy of a particular course of treatment" because such a decision is left to the professional judgment of the medical providers. See Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Malpractice, as a form of negligence, requires proof that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach was the proximate cause of the plaintiff's injuries; and (4) the breach caused the plaintiff actual damages. See Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070 (Pa. 2006).

Defendants are plainly entitled to summary judgment on Timmons's deliberate indifference and malpractice claims. The undisputed evidence of record shows that Lux and Prince provided prompt, extensive treatment of Timmons's physical injuries during his incarceration at SCI-Dallas. Timmons's theory appears to be that these Defendants failed to diagnose that he had a broken nose, but he has not offered any evidence to show that his nose was actually broken, and the examinations by other professionals and x-rays performed at SCI-Frackville showed that his nose was not broken. (Doc. No. 69 ¶¶ 24–30; Doc. No. 72 ¶¶ 24–30.) Moreover, even if Defendants failed to diagnose a broken nose as Timmons alleges, nothing in the record shows that this failure caused Timmons any harm—medical officials at both prisons continued to treat the injuries to Timmons's nose, regardless of whether it was broken. Accordingly, because the undisputed evidence of record shows that Defendants Lux and Prince did not act with deliberate indifference or breach any duty of care, the Court will grant summary judgment to these Defendants Lux and Prince.

  C. **Compensatory Damages**

Finally, the Court will consider Defendants' argument that Timmons may not recover compensatory damages because he did not suffer more than a de minimis physical injury. The

16

PLRA prohibits inmates from bringing claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." See 42 U.S.C. § 1997e(e). A prisoner plaintiff's claims for compensatory damages based on "mental and/or emotional injury" caused by a violation of the plaintiff's constitutional rights are barred by the PLRA unless the plaintiff can establish that he suffered a related physical injury. See Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000). The PLRA requires a plaintiff to establish a "less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury." See Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003).

Here, the Court cannot conclude as a matter of law that Timmons's physical injuries are de minimis. Timmons alleges that Burgess punched him in the face multiple times, which allegedly caused him bleeding in his nose and mouth and bruising on his face. The actual extent of the injuries Timmons suffered and whether they are more than de minimis are questions of fact that cannot be resolved at this stage of litigation.

## VI.    CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of Defendants Lux and Prince, deny summary judgment for Defendant Burgess, deny Timmons's procedural motions, and allow this case to proceed as to Timmons's claims against Burgess. The case will be referred to mediation. If mediation is unsuccessful in resolving the case, it will be scheduled for a trial on the merits. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania